**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**


BRENDA DARLENE GALLARDO,     )
    )
            Plaintiff,     )
    )
         v.     )     1:16CV355
    )
NANCY A. BERRYHILL,     )
Acting Commissioner of Social     )
Security,[1]     )
    )
            Defendant.     )


## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Brenda Darlene Gallardo, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security, denying Plaintiff's claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (Docket Entry 1.) Defendant has filed the certified administrative record (Docket Entry 8 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 11, 14; see also Docket Entry 12 (Plaintiff's Memorandum); Docket Entry 15 (Defendant's Memorandum)). For the reasons that follow, the Court should enter judgment for Defendant.

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Carolyn W. Colvin as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

# I.  PROCEDURAL HISTORY

Plaintiff applied for DIB and SSI, alleging an onset date of August 1, 2011.  (Tr. 188-95.)  Upon denial of those applications initially (Tr. 56-81, 110-15) and on reconsideration (Tr. 82-109, 120-37), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 138-39).  Plaintiff, her attorney, and a vocational expert ("VE") attended the hearing. (Tr. 31-55.)  The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act.  (Tr. 12-26.)  The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-6, 11, 272-74), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

1.   [Plaintiff] meets the insured status requirements of the [] Act through September 30, 2013.

2.   [Plaintiff] has not engaged in substantial gainful activity since August 1, 2011, the alleged onset date.

3.   [Plaintiff] has the following severe impairments: obesity, hypertension, diabetes mellitus, hypothyroidism, anxiety, depression, degenerative disc disease of the lumbar spine with disc protrusion, degenerative disc disease of the cervical spine with spondylosis, fibromyalgia, and asthma.

. . .

4.  [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

5.   . . . [Plaintiff] has the residual functional
capacity to perform light work . . . except she can
perform only occasional climbing of ramps and stairs.
She can only occasionally balance, stoop, crouch, and
crawl.  She can never climb ladders, ropes, or scaffolds.
She must avoid concentrated exposure to hazards such as
fumes, dust, gases, poor ventilation, and extremes of
heat and cold.  [Plaintiff] can perform simple, routine
tasks.  She can have no contact with the public and only
occasional contact with coworkers and supervisors.  She
can tolerate only routine changes in a work environment.

. . .

6.   [Plaintiff] is unable to perform any past relevant
work.

. . .

10.  Considering [Plaintiff's] age, education, work
experience, and residual functional capacity, there are
jobs that exist in significant numbers in the national
economy that [Plaintiff] can perform.

11.  [Plaintiff] has not been under a disability, as
defined in the [] Act, from August 1, 2011, through the
date of this decision.

(Tr. 17-26 (bold font and internal parenthetical citations
omitted).)

## II.  DISCUSSION

Federal law "authorizes judicial review of the Social Security
Commissioner's denial of social security benefits."  Hines v.
Barnhart, 453 F.3d 559, 561 (4th Cir. 2006).  However, "the scope
of [the Court's] review of [such a] decision . . . is extremely
limited."  Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981).

Plaintiff has not established entitlement to relief under the extremely limited review standard.

## A.  Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, the Court "must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (brackets and internal quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence

4

allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2] "To regularize the adjudicative process, the Social Security Administration has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's]

---

[2] The Act "comprises two disability benefits programs. [DIB] provides benefits to disabled persons who have contributed to the program while employed. [SSI] . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

medical condition." <u>Id.</u> "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." <u>Id.</u>

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' *i.e.*, currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." <u>Albright v. Commissioner of the Soc. Sec. Admin.</u>, 174 F.3d 473, 475 n.2 (4th Cir. 1999).[3] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." <u>Bennett v. Sullivan</u>, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." <u>Mastro</u>, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment

---

[3] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." <u>Hunter</u>, 993 F.2d at 35 (internal citations omitted).

is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ("RFC")." Id. at 179.[4]  Step four then requires the ALJ to assess whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled. See id. at 179-80.  However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[5]

---

[4]  "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)).  The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265.  "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

[5]  A claimant thus can establish disability via two paths through the SEP.  The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five.  Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process,
(continued...)

7

## B. Assignments of Error

Plaintiff contends that the Court should overturn the ALJ's finding of no disability on these grounds:

(1) the ALJ "erred in failing to accord appropriate weight to the opinion evidence in the record" (Docket Entry 12 at 7 (bold font and capitalization omitted));

(2) the ALJ "erred in failing to find that [Plaintiff's] impairments meet or medically equal Listing 1.04" (id. at 10 (bold font and capitalization omitted)); and

(3) the ALJ "erred in finding that [Plaintiff] has the [RFC] to perform a reduced range of light work (id. at 11 (bold font and capitalization omitted)).

Defendant disputes Plaintiff's assignments of error, and urges that substantial evidence supports the finding of no disability. (See Docket Entry 15 at 7-20.)

### 1. Opinion Evidence

In Plaintiff's first assignment of error, she contends that the ALJ "erred in failing to accord appropriate weight to the opinion[s]" of treating orthopedist Dr. Vincent E. Paul and consultative psychological examiner Dr. Gregory A. Villarosa. (Docket Entry 12 at 7 (bold font and capitalization omitted).) According to Plaintiff, "[t]he opinion of a treating physician is

---

[5] (...continued)
review does not proceed to the next step.").

entitled to great weight and may only be disregarded if there is persuasive contradictory evidence" (id. (citing Coffman v. Bowen, 829 F.2d 514 (4th Cir. 1987)), and Plaintiff asserts that Dr. Paul's opinions find support from "the cervical and lumbar MRIs in the record, . . . his findings on examination" (id. at 8 (citing Tr. 382-87, 389-91)), and a decision by the North Carolina Department of Health and Human Services, issued after the ALJ's decision in this case and submitted to the Appeals Council, finding Plaintiff eligible for Medicaid benefits (id at 8-9 (citing Tr. 8-9)). Further, Plaintiff maintains that "Dr. Villarosa's opinion was entitled to more than the limited weight accorded to it by [the] ALJ," because "Dr. Villarosa was chosen by Social Security Disability [sic] to evaluate [P]laintiff [and,] [a]s a state medical consultant, Dr. Villarosa is a highly qualified physician and expert in evaluating [P]laintiff's medical impairments." (Id. at 9.) Plaintiff's arguments miss the mark.

As an initial matter, Plaintiff misrelies on Coffman and the "persuasive contradictory evidence" standard. (Docket Entry 12 at 7.) That phrasing of the "treating physician rule" no longer represents the governing standard. See Stroup v. Apfel, No. 96-1722, 205 F.3d 1334 (table), 2000 WL 216620, at *5 (4th Cir. Feb. 24, 2000) (unpublished) ("The 1991 regulations supersede the 'treating physician rule' from our prior case law."); Shrewsbury v. Chater, No. 94-2235, 68 F.3d 461 (table), 1995 WL 592236, at *2 n.5

(4th Cir. Oct. 6, 1995) (unpublished) ("As regulations supersede contrary precedent, the cases cited by [the plaintiff] defining the scope of the 'treating physician rule' decided prior to 20 C.F.R. § 416 and related regulations are not controlling." (internal citation omitted)); accord Brown v. Astrue, Civil Action No. CBD-10-1238, 2013 WL 937549, at *4 (D. Md. Mar. 8, 2013) (unpublished); Benton v. Astrue, Civil Action No. 0:09-892-HFF-PJG, 2010 WL 3419272, at *1 (D.S.C. Aug. 30, 2010) (unpublished); Pittman v. Massanari, 141 F. Supp. 2d 601, 608 (W.D.N.C. 2001); Ward v. Chater, 924 F. Supp. 53, 55-56 (W.D. Va. 1996).

Under the proper standard, the treating source rule does generally require an ALJ to give controlling weight to the opinion of a treating source regarding the nature and severity of a claimant's impairment. See 20 C.F.R. §§ 404.1527(c)(2),416.927(c) ("[T]reating sources . . . provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations."). However, the rule also recognizes that not all treating sources or treating source opinions merit the same deference. The nature and extent of each treatment relationship appreciably tempers the weight an ALJ affords an opinion. See 20 C.F.R. §§ 404.1527(c)(2)(ii), 416.927(c)(2)(ii). Moreover, as

subsections (2) through (4) of the rule describe in great detail, a treating source's opinion, like all medical opinions, deserves deference <u>only</u> if well-supported by medical signs and laboratory findings <u>and</u> consistent with the other substantial evidence in the case record.  <u>See</u> 20 C.F.R. §§ 404.1527(c)(2)-(4), 416.927(c)(2)-(4).  "[I]f a physician's opinion is not supported by clinical evidence <u>or</u> if it is inconsistent with other substantial evidence, it should be accorded significantly less weight."  <u>Craig</u>, 76 F.3d at 590 (emphasis added).  Finally, opinions by physicians regarding the ultimate issue of disability and other such findings dispositive of a case do not receive controlling weight because the Commissioner reserves the authority to render such decisions.  <u>See</u> 20 C.F.R. §§ 404.1527(d), 416.927(d).

a. Dr. Paul

    In this case, on April 17, 2014, Dr. Paul completed a "Medical statement regarding low back pain for Social Security disability claim" ("Medical Statement") (Tr. 380-81), on which he diagnosed Plaintiff with neck and lumbar spondylosis with radiculopathy (<u>see</u> Tr. 380).  Dr. Paul indicated that Plaintiff's spinal impairments caused neuro-anatomic distribution of pain, limitation of motion of the spine, decreased grip strength in the left hand, a positive straight leg raising test, severe burning or painful dysesthesia, the need to change position more than once every two hours, lumbar spinal stenosis, cervical lateral recess stenosis, and an inability

to ambulate effectively. (Id.) Dr. Paul further opined that, as a result of Plaintiff's spinal impairments, Plaintiff could stand and sit for only 60 minutes at a time each, could work for just one hour per day, and could not perform _any_ lifting, bending, or stooping. (Id.) Dr. Paul concluded that Plaintiff's symptoms had disabled her for "[one] year at least." (Id.)

Here, the ALJ's evaluation of Dr. Paul's opinions complied with the regulatory requirements. The ALJ assessed Dr. Paul's opinions as follows:

> [T]he opinion of Dr. Paul is considered but cannot be fully credited. The treatment provider opined that [Plaintiff] was disabled, an opinion which is not supported by physical examination. [Plaintiff] had very little treatment with Dr. Paul, just two visits, although he told [Plaintiff] that he would complete her disability forms. His actual examinations indicated less than disabling findings, and actually indicated that [Plaintiff] was responding well to prescribed medications in reducing pain symptoms. Therefore, Dr. Paul's opinion is considered to be largely based on [Plaintiff's] subjective complaints and cannot be given great credibility. Little weight is given to this opinion.

(Tr. 24 (internal citations omitted) (emphasis added).)

Plaintiff contests the ALJ's reasons, emphasized above, for discounting Dr. Paul's opinions. (See Docket Entry 12 at 8.) In that regard, Plaintiff argues that, [a]s [P]laintiff's treating orthopedist, Dr. Paul is able to provide a unique perspective to the medical evidence that cannot be obtained from the reports of individual examinations." (Id.) Plaintiff further contends that the results of "cervical and lumbar MRIS" and Dr. Paul's "findings

on examination that [P]laintiff had difficulty with fine motor skills, changing positions, and balancing, that she had positive Hoffman, Romberg, and Spurling signs, [positive] tandem gait tests, and [positive] straight leg tests, that she had hypoactive knee and ankle reflexes, and that she walked with a slow and guarded gait" all provide support for Dr. Paul's opinions. (Id.) Plaintiff's argument glosses over both the timing of Dr. Paul's opinions and Plaintiff's subsequent treatment with Dr. Paul.

Notably, Dr. Paul completed the Medical Statement, which included his opinion that Plaintiff's spinal impairments had disabled her for "one year at least" (Tr. 380), during his very first examination of Plaintiff (see Tr. 383 (April 17, 2014 treatment note reflecting Plaintiff's request that Dr. Paul complete disability forms for her and Dr. Paul's willingness to do so)).[6] Thus, doubt exists as to whether, at the time Dr. Paul completed the Medical Statement, he would even qualify as a "treating physician" under the regulations, see 20 C.F.R. §§ 404.1527(c)(2)(i), 416.927(c)(2)(i), or that he "provide[d] a unique perspective to the medical evidence that [could not] be obtained from the reports of individual examinations" (Docket Entry 12 at 8 (emphasis added)). Accordingly, the ALJ properly discounted Dr. Paul's opinions, in part, because Plaintiff had

_____

[6] Plaintiff treated on one prior occasion with another orthopedist at the same practice as Dr. Paul, Dr. Mark Dumonski, on March 21, 2014. (See Tr. 385-87.)

pursued "very little treatment with Dr. Paul, just two visits." (Tr. 24.)

Moreover, substantial evidence supports the ALJ's other rationale for discounting Dr. Paul's opinions, i.e., that his findings on examination do not support his extreme restrictions. (See Tr. 24.) Just eleven days after Dr. Paul issued his Medical Statement finding Plaintiff disabled, Plaintiff returned to Dr. Paul for follow-up, and Dr. Paul observed that Plaintiff had "miraculously done quite well on [the prescribed Medrol Dosepak] with marked improvement in neck and low back pain." (Tr. 382 (emphasis added).) Moreover, Dr. Paul found much less tenderness in Plaintiff's neck and lower back and no symptoms of radiculopathy. (Id.) The record reflects neither any further treatment with Dr. Paul nor any subsequent visits to other orthopedists. Thus, the ALJ correctly observed that Dr. Paul's "examinations indicated less than disabling findings, and actually indicated that [Plaintiff] was responding well to prescribed medications in reducing pain symptoms." (Tr. 24.)

In short, the ALJ supported her decision to discount Dr. Paul's opinions with substantial evidence.[7]

---

[7] Plaintiff's reliance on the January 29, 2016, Medicaid approval letter as further support for Dr. Paul's opinion falls short. (See Docket Entry 12 at 8-9; see also Tr. 8-9.) The Appeals Council considered the letter (see Tr. 2, 8-9), but correctly determined that the letter "[wa]s not relevant to a claim of disability under the [] Act." (Tr. 2.) The letter, which consists merely of check boxes and contains no analysis, reflects that Plaintiff and her three daughters met the eligibility criteria for Medicaid coverage under Section 3235 of the Family and Children's Medicaid Manual. (See Tr. 9.) Section 3235 grants
(continued...)

b. Dr. Villarosa

Consultative examiners such as Dr. Villarosa do not constitute treating sources under the regulations, <u>see</u> 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2), and thus their opinions, as a general proposition, do not warrant controlling weight, <u>Turberville v. Colvin</u>, No. 1:11CV262, 2014 WL 1671582, at *6 (M.D.N.C. Apr. 23, 2014) (unpublished), <u>recommendation adopted</u>, slip op. (M.D.N.C. May 15, 2014) (Eagles, J.). However, the ALJ must nevertheless evaluate consultative opinions using the factors outlined in the regulations, and expressly indicate and explain the weight he or she affords to such opinions. <u>See</u> 20 C.F.R. §§ 404.1527(c), 416.927(c) ("<u>Regardless of its source</u>, [the ALJ] <u>will</u> evaluate <u>every</u> medical opinion [he or she] receive[s]" and where an opinion does not warrant controlling weight, [the ALJ must] consider all of the . . . factors [in 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6)] in deciding the weight [to] give to <u>any</u> medical opinion." (emphasis added)).

Dr. Villarosa evaluated Plaintiff on November 27, 2012 (<u>see</u> Tr. 325-28), and diagnosed her with major depression, single episode, moderate, and panic disorder with agoraphobia (<u>see</u> Tr.

---

[7] (...continued)
coverage to caretakers of dependent children who meet specific income requirements, and does not depend on disability or inability to work. <u>See</u> https://www2.ncdhhs.gov/info/olm/manuals/dma/fcm/man (reflecting that Section 3235 has been recodified as Section 15034 of the Integrated Eligibility Manual); https://economicbenefits.nc.gov/FN_A/FN_A/server/general/projects/Integrated%20Eligibility%20Manual/Integrated_Eligibility_Manual.htm#IEM_Home.htm (containing eligiblity requirements for caretaker Medicaid) (last visited April 11, 2017).

327).  Based on that evaluation, Dr. Villarosa opined that
Plaintiff's "current condition would result in some difficulty with
work-related activities," and that "[s]he may have some difficulty
handling the stress and pressures associated with day-to-day work
activity."  (Tr. 327 (emphasis added).)

The ALJ discussed Dr. Villarosa's opinions (see Tr. 22), and
concluded as follows:

> The opinion of the consultative psychological examiner,
> Dr. Villarosa, is given little weight as his opinion was
> vague and appeared to be influenced by [Plaintiff's]
> statements.  His opinion that she may have problems
> without any limitations is not specific.

(Tr. 24 (citation omitted).)

Plaintiff does not specifically contest the ALJ's grounds for
discounting Dr. Villarosa's opinions, but argues, generally, that
"Dr. Villarosa's opinion was entitled to more than the limited
weight accorded to it by [the] ALJ," because "Dr. Villarosa was
chosen by Social Security Disability [sic] to evaluate [P]laintiff
[and,] [a]s a state medical consultant, Dr. Villarosa is a highly
qualified physician and expert in evaluating [P]laintiff's medical
impairments."  (Docket Entry 12 at 9.)  Plaintiff's argument fails
from a logical perspective.  If an opinion source's status as a
consultative examiner hired by the Social Security Administration
required ALJs to give the examiner's opinions significant weight,
no reason would exist for ALJ review.

Moreover, the ALJ here discounted Dr. Villarosa's opinions as vague and overly reliant on Plaintiff's subjective complaints. (See Tr. 24.) Both of those reasons constitute permissible grounds on which to discount a medical source's opinions. See Rogers v. Commissioner of Soc. Sec. Admin., 490 F. App'x 15, 17 (9th Cir. 2012) (concluding ALJ properly discounted as equivocal physician's opinion that the claimant "might be unable to deal with the usual stress encountered in the workplace" (emphasis added)); Craig, 76 F.3d at 590 (finding "sufficient evidence justifie[d] the ALJ's rejection" of physician's opinion where opinion relied on claimant's "subjective reports of pain").

In sum, Plaintiff's first claim on review fails to entitle her to relief.

## 2. Listing 1.04

In Plaintiff's second issue on review, she alleges that the ALJ "erred in failing to find that [Plaintiff's] impairments meet or medically equal Listing 1.04." (Docket Entry 12 at 10 (bold font and capitalization omitted).) More specifically, Plaintiff asserts that the results of cervical and lumbar MRIs in April 2014, as well as the findings on examination by Drs. Paul and Dumonski in March and April 2014 (see id. at 10-11 (citing Tr. 380-887, 389-91)), demonstrate that Plaintiff "me[t] and/or equal[ed] the functional equivalent of Listing 1.04" (id. at 11 (emphasis added)). Plaintiff's argument fails as a matter of law.

"Under Step 3, the [Social Security Administration's SEP] regulation states that a claimant will be found disabled if he or she has an impairment that 'meets or equals one of [the] listings in appendix 1 of [20 C.F.R. Pt. 404, Subpt. P] and meets the duration requirement.'" Radford v. Colvin, 734 F.3d 288, 293 (4th Cir. 2013) (quoting 20 C.F.R. § 404.1520(a)(4)(iii)) (internal bracketed numbers omitted). "The listings set out at 20 CFR pt. 404, subpt. P, App. 1, are descriptions of various physical and mental illnesses and abnormalities, most of which are categorized by the body system they affect. Each impairment is defined in terms of several specific medical signs, symptoms, or laboratory test results." Sullivan v. Zebley, 493 U.S. 521, 529-30 (1990) (internal footnote and parentheticals omitted).

"In order to satisfy a listing and qualify for benefits, a person must meet all of the medical criteria in a particular listing." Bennett, 917 F.2d at 160 (citing Zebley, 493 U.S. at 530, and 20 C.F.R. § 404.1526(a)); see also Zebley, 493 U.S. at 530 ("An impairment that manifests only some of those criteria [in a listing], no matter how severely, does not qualify."). "An impairment or combination of impairments medically equals a listing when it is at least equal in severity and duration to the criteria of any listed impairment." Grimes v. Colvin, No. 1:14CV891, 2016 WL 1312031, at *4 (M.D.N.C. Mar. 31, 2016) (unpublished) (Osteen, Jr., C.J.) (citing 20 C.F.R. § 416.926(a)-(b)); see also Lewis v.

<u>Apfel</u>, 236 F.3d 503, 514 (9th Cir. 2001) ("A finding of medical equivalence must be based on <u>medical</u> evidence only." (citing 20 C.F.R. § 404.1529(d)(3)) (emphasis added)). "[O]nly where there is ample evidence in the record to support a determination that a claimant's impairment meets or equals one of the listed impairments must the ALJ identify the relevant listed impairments and compare them to evidence of a plaintiff's symptoms." <u>Reynolds v. Astrue</u>, No. 3:11CV49, 2012 WL 748668, at *4 (W.D.N.C. Mar. 8, 2012) (unpublished) (citing <u>Cook v. Heckler</u>, 783 F.2d 1168, 1172-73 (4th Cir. 1986)).

For Listing 1.04, a claimant must offer proof not only of a "[d]isorder[] of the spine," such as "degenerative disc disease," but also "result[ant] compromise of a nerve root . . . or the spinal cord," 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 1.04, <u>and</u>:

>    A.   Evidence of nerve root compression characterized by neuroanatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
>
>    <u>or</u>
>
>    B.   Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
>
>    <u>or</u>

> C. Lumbar spinal stenosis resulting in pseudo-
> claudication, established by findings on appropriate
> medically acceptable imaging, manifested by chronic
> nonradicular pain and weakness, and resulting in
> inability to ambulate effectively, as defined in 1.00B2b.

(Id. (emphasis added).)

In this case, although the ALJ did describe the requirements of Listing 1.04 in her decision, she did not provide any specific analysis supporting her finding that Plaintiff's degenerative disc disease did not meet or equal the criteria of that listing. (See Tr. 18.) However, the ALJ's omission of such analysis remains harmless under the facts presented here, because Plaintiff cannot show "there is ample evidence in the record to support a determination that [she] met or equalled" Listing 1.04, Cook, 783 F.2d at 1172 (emphasis added). (See Docket Entry 12 at 10-11.)

As an initial matter, Plaintiff neither clarified in her argument whether her spinal impairments met or equaled the criteria of paragraphs A, B, or C of Listing 1.04, nor stated whether she relied on her cervical or lumbar impairments (or both) to meet or equal the listing. (Id.) Plaintiff's failure to develop that argument should defeat her claim of meeting/equaling Listing 1.04. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[A] litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace." (internal quotation marks omitted)); Hughes v. B/E Aerospace, Inc., No. 1:12CV717, 2014 WL 906220, at *1 n.1 (M.D.N.C. Mar. 7, 2014) (unpublished) ("A

party should not expect a court to do the work that it elected not to do.").

Further, ample evidence does not exist that Plaintiff's back impairments could meet or equal the criteria of Listing 1.04. With regard to paragraph A, the record lacks evidence of "motor loss," defined as "atrophy with associated muscle weakness or muscle weakness." 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 1.04A. The regulations further explain that "a report of atrophy is not acceptable as evidence of significant motor loss without circumferential measurements of both thighs and lower legs, or both upper and lower arms, as appropriate, at a stated point above and below the knee or elbow given in inches or centimeters." Id., § 1.00E1. Although the record contains some evidence of reduced strength in Plaintiff's left upper extremity and bilateral legs, those reports lack any accompanying measurements demonstrating atrophy. (See Tr. 380, 383, 386.) Paragraph B of Listing 1.04 requires a diagnosis of spinal arachnoiditis, which the record clearly lacks. Respecting paragraph C, Plaintiff cannot show an "inability to ambulate effectively," as the record lacks evidence that Plaintiff requires a hand-held assistive device to ambulate that limits the use of both her upper extremities. See 20 C.F.R. Pt. 404, Subpt. P, App'x 1, §§ 1.00B2b(1), 1.04C.

Moreover, despite Plaintiff's bald assertion that her "combination of symptoms results in [her] meeting and/or equaling

the _functional equivalent_ of Listing 1.04" (Docket Entry 12 at 11 (emphasis added)), she has not come forward with _medical evidence_ that would warrant a finding that her impairments rise to a level equivalent to the foregoing listing requirements (_see id._ at 10-11). "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall _functional_ impact of [her] unlisted impairment or combination of impairments is as severe as that of a listed impairment." _Zebley_, 493 U.S. at 531 (emphasis added).

Thus, the ALJ did not err by finding that Plaintiff's impairments failed to meet or equal Listing 1.04.

### 3. RFC

Lastly, Plaintiff alleges that the "ALJ [] erred in finding that [Plaintiff] has the [RFC] to perform a reduced range of light work." (Docket Entry 12 at 11 (capitalization and bold font omitted).) More particularly, Plaintiff maintains that Dr. Paul's Medical Statement and Plaintiff's testimony establish that Plaintiff cannot perform work "at any substantial gainful level." (_Id._ at 11-12 (citing Tr. 35-50, 380-81).) Plaintiff further contends that the ALJ's "RFC analysis failed to fully and accurately account for [Plaintiff's] mental limitations in concentration, persistence, or pace ("CPP")." (_Id._ at 12 (citing _Mascio v. Colvin_, 780 F.3d 632 (4th Cir. 2015)).) Plaintiff's allegations warrant no relief.

RFC measures the most a claimant can do despite any physical and mental limitations. Hines, 453 F.3d at 562; 20 C.F.R. §§ 404.1545(a), 416.945(a). An ALJ must determine a claimant's exertional and non-exertional capacity only after considering all of a claimant's impairments, as well as any related symptoms, including pain. See Hines, 453 F.3d at 562–63; 20 C.F.R. §§ 404.1545(b), 416.945(b). The ALJ then must match the claimant's exertional abilities to an appropriate level of work (i.e., sedentary, light, medium, heavy, or very heavy). See 20 C.F.R. §§ 404.1567, 416.967. Any non-exertional limitations may further restrict a claimant's ability to perform jobs within an exertional level. See 20 C.F.R. §§ 404.1569a(c), 416.969a(c). An ALJ need not discuss every piece of evidence in making an RFC determination. See Reid v. Commissioner of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014) (citing Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005)). Instead, the ALJ need only "build an accurate and logical bridge from the evidence to [the] conclusion." Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000).

In the instant case, the ALJ supported her RFC determination with substantial evidence. She discussed Plaintiff's testimony and the objective medical evidence (including Dr. Paul's Medical Statement) in a fair amount of detail. (See Tr. 21-23.) However, the ALJ ultimately did not find Plaintiff's testimony entirely credible (see Tr. 23), and Plaintiff has not raised any particular

23

challenge to the ALJ's evaluation of Plaintiff's subjective complaints (see Docket Entry 12 at 6-13). Further, the ALJ gave "[l]ittle weight" to Dr. Paul's Medical Statement (see Tr. 24) and, for the reasons discussed in more detail in conjunction with Plaintiff's first assignment of error, substantial evidence supports the ALJ's decision to afford little weight to Dr. Paul's Medical Statement.

Plaintiff additionally maintains that the ALJ's "RFC analysis failed to fully and accurately account for [Plaintiff's] mental limitations in [CPP]." (Docket Entry 12 at 12.) According to Plaintiff, "[w]here a plaintiff has limitations in [CPP], an ALJ does not account for such limitations by restricting the plaintiff's [RFC] to simple, routine tasks or unskilled work" (id. (citing Mascio)), because "the ability to perform simple tasks differs from the ability to stay on task[, and] [o]nly the latter limitation would account for a plaintiff's limitation in [CPP]" (id. at 12-13 (citing Mascio)). Plaintiff thus argues that the ALJ failed to account for Plaintiff's moderate difficulties in CPP "by merely limiting [P]laintiff to simple, routine, and repetitive tasks ("SRRTs")." (Id. at 13.) Plaintiff's argument misses the mark.

The United States Court of Appeals for the Fourth Circuit has held that "the ability to perform simple tasks differs from the ability to stay on task" and that "[o]nly the latter limitation

24

would account for a claimant's limitation in [CPP]." Mascio, 780
F.3d at 638. However, that court also allowed for the possibility
that an ALJ could adequately explain why moderate limitation in
concentration, persistence, or pace would not result in any
limitation in the RFC. Id. A neighboring district court had
occasion to discuss this very point:

> Mascio does not broadly dictate that a claimant's
> moderate impairment in concentration, persistence, or
> pace always translates into a limitation in the RFC.
> Rather, Mascio underscores the ALJ's duty to adequately
> review the evidence and explain the decision . . . . An
> ALJ may account for a claimant's limitation with
> concentration, persistence, or pace by restricting the
> claimant to simple, routine, unskilled work where the
> record supports this conclusion, either through physician
> testimony, medical source statements, consultative
> examinations, or other evidence that is sufficiently
> evident to the reviewing court.

Jones v. Colvin, No. 7:14CV00273, 2015 WL 5056784, at *10-12 (W.D.
Va. Aug. 20, 2015) (Magistrate Judge's Report & Recommendation
adopted by District Judge) (unpublished) (emphasis added); see also
Hutton v. Colvin, No. 2:14-CV-63, 2015 WL 3757204, at *3 (N.D.W.
Va. June 16, 2015) (unpublished) (finding reliance on Mascio
"misplaced," because ALJ "gave abundant explanation" for why
unskilled work adequately accounted for claimant's moderate
limitation in CPP, by highlighting the claimant's daily activities
and treating physicians' opinions).

As an initial matter, Plaintiff glosses over the fact that the
ALJ's RFC contained mental restrictions in addition to the
prohibition on activities other than SRRTs. (See Docket Entry 12

at 12-13.)  The ALJ also restricted Plaintiff to no contact with the general public, only occasional contact with supervisors and coworkers, and only routine changes in the work environment.  (See Tr. 21.)  Moreover, the ALJ's decision provides a sufficient explanation as to why those restrictions, in combination, sufficiently accounted for Plaintiff's moderate deficit in CPP.

First, the ALJ discussed Plaintiff's testimony regarding her mental symptoms, but concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms [we]re not entirely credible."  (Tr. 23.)  As discussed above, Plaintiff failed to raise a direct challenge to the ALJ's evaluation of Plaintiff's subjective complaints.  (See Docket Entry 12 at 6-13.)

Second, the ALJ discussed and weighed the opinion evidence as it related to Plaintiff's ability to function mentally.  (See Tr. 22, 24.)  The ALJ noted the opinion of consultative psychological examiner Dr. Villarosa that Plaintiff "had no difficulty . . . maintaining focus and concentration sufficient to retain and follow directions."  (Tr. 23; see also Tr. 325-28.)  The ALJ also gave "great weight" to the state agency psychological consultants's opinions.  (Tr. 24.)  Notably, both consultants found that Plaintiff suffered moderate limitation in CPP (see Tr. 60, 87), but that, despite that concentrational deficit, Plaintiff remained "able to understand and remember simple instructions" (Tr. 63; see

<u>also</u> Tr. 90), and possessed "the ability to <u>maintain attention and</u> <u>concentration for 2 hours at a time as required for the performance</u> <u>of simple tasks</u>" (Tr. 91; <u>see also</u> Tr. 64 (emphasis added)).[8] Under these circumstances, the ALJ adequately explained why a restriction to SRRTs, as well as restrictions on interpersonal interaction and workplace changes, sufficiently accounted for Plaintiff's moderate limitation in CPP.

In sum, the ALJ complied with <u>Mascio</u> and supported her RFC determination with substantial evidence.

### III. CONCLUSION

Plaintiff has not established an error warranting reversal or remand.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 11) be denied, that

---

[8] Both state agency psychological consultants concluded that Plaintiff remained capable of performing SRRTs with low interpersonal demands, but also included restrictions to a low stress environment and a low production setting. (<u>See</u> Tr. 62, 64, 65, 88, 92.) The ALJ, despite giving "great weight" to the state agency psychological consultants opinions (<u>see</u> Tr. 24), did not include a restriction to a low stress environment or a low production setting in the RFC (<u>see</u> Tr. 21-22). Neither Plaintiff nor the Commissioner addressed this apparent inconsistency between the consultants's opinions and the RFC in their briefing to this Court. (<u>See</u> Docket Entry 12 at 6-13; Docket Entry 15 at 7-20.) The Court thus need not address that subject. <u>See generally</u> <u>Zannino</u>, 895 F.2d at 17 ("[A] litigant has an obligation to spell out its arguments squarely and distinctly, or else forever holds its peace."); <u>Hughes</u>, 2014 WL 906220, at *1 n.1 ("A party should not expect a court to do the work that it elected not to do.").

Defendant's Motion for Judgment on the Pleadings (Docket Entry 14)

be granted, and that this action be dismissed with prejudice.


                             /s/ L. Patrick Auld
                                **L. Patrick Auld**
               **United States Magistrate Judge**

April 20, 2017